Carver *v.* Creque.

———○ ○·○———

CARVER <em>vs.</em> CREQUE.

| 46b | 507 |
| --- | --- |
| 169 NY⁴180 | |
| 46b | 507 |
| 37 Mis⁴496 | |

Where the electors of a town, at a special town meeting called for that purpose, voted to raise a specified sum for each man who should enlist and be credited to the quota of said town, under a call of the President of the United States for 500,000 men; *Held* that an individual who enlisted, and was mustered in and credited to the town, intermediate the call of the town meeting and the taking of the vote, was entitled to the bounty which the electors voted to raise for volunteers.

*Held, also,* that a claim having been made upon the town, founded on such enlistment, which was acknowledged, and the amount of the bounty paid by the town in the obligations of the town issued for that purpose, the question of the liability of the town was then ended and disposed of, and the only question remaining was, who was entitled to the obligations, and to the moneys afterwards paid thereon.

*Held, further,* that it was no part of the intention of the electors, by their action, to enable any one to speculate, by furnishing a substitute at a less price, and himself receiving the bounty. That the person enlisting was entitled to the bounty; and that he having assigned to another, for a good consideration, his claim to the bounty, giving him an order upon the supervisor of the town for it, the assignee of that order might maintain an action against one who had gotten possession of the bonds issued for the bounty and wrogfully converted them, to recover the possession thereof.

Carver *v.* Creque.

Also *held*, that although the recruit enlisted in anticipation of the bounty, and in the expectation that it would be realized by him, yet after he had performed the conditions on his part, he had an equitable right to whatever the electors should determine to give to volunteers. That this was an equity which he could sell, for a consideration, and transfer to another; and that he having sold and assigned such equity, the moment the proceedings of the town ripened into a legal claim against the town, it vested as such in the assignee.

ON the 30th day of August, 1864, the town of Wolcott, in the county of Wayne, by its proper officers, and pursuant to chapter 8 of the Laws of 1864, called a special town meeting, to be held on the 7th day of September then next, to determine " whether the sum of six hundred dollars shall be raised as a bounty to each individual and volunteer from the town," * * * * " to fill· the quota assigned to said town under the last call of the President of the United States for five hundred thousand men." Michael McMahon was duly enlisted and mustered into the service of the United States from the town of Wolcott, for the period of three years, on the 3d day of September, 1864, to the credit of the town of Wolcott, to help fill the quota assigned to said town, under the above mentioned call of the President. At the meeting of the town, held in pursuance of said call, it was determined, by a large majority of the votes cast, to raise the said bounty of six hundred dollars. The supervisor of the town was made the person or officer to issue the bonds or securities by which such bounty was to be paid to the recruit or volunteer. After or upon the muster into the United States service, of said McMahon, and on the said 3d day of September, 1864, L. S. Ketchum paid to him the sum of $1325 in cash, as and for his county and town bounty ; and as a consideration for his assignment to said Ketchum, of his (McMahon's) right and title to said bounties, and Mc-Mahon, in writing, acknowledged such payment, and assigned his right, &c. thereto to said Ketchum. Ketchum afterwards, for a full cash consideration received by him of the plaintiff, before the commencement of this action, and before the de-

mand of the bonds of the defendant, assigned his title and right to the plaintiff, who, by his attorney, and before the commencement of this action, duly demanded the bonds of the town of Wolcott of the defendant, who then stated that he had sold the bonds or notes, and had passed them away. On the trial, the bonds, which were negotiable securities, were produced by the supervisor of the town of Wolcott, who stated that he had, as such officer, paid them, and held them as vouchers for such payment. The defendant knew, on the 3d day of September, or on some day before the 7th of that month, that Ketchum claimed or had received an assignment of these bounties, and assented and agreed to his receiving them, or the securities to be issued for them. McMahon was put in as a substitute for the defendant, but the defendant paid him no money therefor, and had received from Ketchum, prior to this assent or agreement, all the money which the defendant had furnished Ketchum, being $300, with which to procure a substitute for him. On or about the 17th day of October, 1864, the defendant procured the proper town officers of the town of Wolcott to issue to him the bonds or securities of such town, due to McMahon as such volunteer; which issuance was procured by the production of a duplicate of McMahon's certificate of muster to the credit of the town, procured from one Knapp, provost marshal and mustering officer of the proper district; the defendant claiming at the same time that he had furnished or procured McMahon as a substitute. There is nothing in the resolution of the town, nor was there any proof of any other action of the town, authorizing persons who had procured substitutes to receive or claim the town bounty. The securities, called bonds in the complaint and testimony, are in fact notes or promises of the town, payable to "the bearer," and were conceded to be of the value of the sum payable by their terms, with interest from their date, which is September 3, 1864. The action was commenced December, 1864. The plaintiff was nonsuited. He then moved upon the judge's

minutes for a new trial, which was afterwards granted. From that order the defendant appealed to this court.

*Collins & Roe,* for the appellant,

*J. Welling,* for the respondent.

*By the Court,* JOHNSON, J. Upon the undisputed facts, this, to my mind, is a very plain case. There can be no doubt, I think, that McMahon, who enlisted and was mustered into the service and credited to the town of Wolcott, under the call of the President of the United States for five hundred thousand men, was entitled to the bounty which the electors of said town voted to raise for each man who should enlist and be credited to the quota of said town, under said call. The call or notice of the special town meeting, to determine the question of bounties, was dated the 30th of August, 1864, and the meeting was held in pursuance thereof, and the vote regularly taken on the 7th of September following. McMahon enlisted and was mustered in and credited, on the 3d of September, between the call and the vote. It is claimed on behalf of the defendant that, inasmuch as McMahon enlisted and was mustered in and credited to the town before the vote was taken, the offer or promise of the town, made by the vote of the electors, did not apply to him, or to any one enlisting and credited before such vote was taken. But I am of the opinion that the terms are broad enough to include this case of McMahon. It was undoubtedly intended to embrace every one who enlisted so as to be credited on the town quota, under that call. The town authorities so understood it, and righfully, as I think, confessed the obligation of the town to pay. But whether, strictly, payment could have been enforced against the town by McMahon or his assignees, is not very material in this case, as the town never resisted the claim, but acknowledged it and undertook to satisfy it, by issuing its bond in the usual form, and afterwards

paying the money in satisfaction of the bonds so issued. And as these bonds were delivered to the defendant, upon the certificate of McMahon's enlistment, and of his having been credited to that town, and the money was afterwards paid to him in satisfaction of such bonds, it does not now become the defendant, or indeed lie with him, to assert that no legal obligation was imposed upon the town. I do not see how it arises, or can be litigated in this action; especially as between the defendant and McMahon or his assigns. It is enough, I think, that the claim was made upon the town, founded upon this enlistment, and that the claim was acknowledged and the amount of the bounty handed over by such town. The question of the liability of the town was then ended and disposed of, and the only question remaining was, and is, who was lawfully entitled to the bonds issued in satisfaction of the claim, and to the moneys afterwards paid thereon.

It is entirely clear, I think, that the defendant had no right whatever to this bounty. He did not come within the terms or spirit of the proposal made by the voters. He did not enlist, and was not credited upon the quota. Granting that McMahon was his hired substitute as between them, and by thus enlisting saved the defendant from being drafted into the service, I do not perceive how that could give him any shadow of claim to the bounty. The proposal or promise of the town was not to those who declined to enter the service personally and endure its hardships, perils and privations, and exempted themselves from all liability, by hiring others to enlist in their place and stead, but it was to those, and those only, who should *enlist*, and be credited upon the town quota. It was clearly no part of the intention of the electors, by their action, to enable any one to speculate, by furnishing a substitate at a less price and keeping himself out of harm's way. McMahon was the only one who could pretend to come within the terms held out or promised. He enlisted and was credited to the town, and took upon himself the duties, obli-

gations, and perils, of the service. It is not pretended that he ever agreed or expected that the defendant was to take the bounty of the town. The defendant advanced only a small portion of what McMahon actually received as the consideration of his enlisting, less than one fourth. The latter was paid by the plaintiff's assignor $1350, and thereupon enlisted, and assigned to the person paying it his claim to the bounty, giving him an order upon the supervisor of the town for it. This order was duly assigned to the plaintiff. It is claimed by the defendant's counsel, that by this order the payee acquired no right or title to this bounty, from McMahon. I think otherwise. It was a sale founded upon a good consideration paid in hand, and of course transferred to the person to whom it was given all the right and title McMahon then had or could have. It appears clearly enough that McMahon enlisted in anticipation of this bounty, after the preliminary steps had been taken by the town authorities to secure its proffer, and in the confident expectation that it would be realized by him. It had not then ripened into a legal claim, and strictly he could then have had no vested interest in it. But it was then more than a mere conjectural possibility. He had performed on his part the conditions, and had an equitable right to whatever the electors should, in concluding the proceedings then inaugurated, determine to give to those performing the conditions.

It was an equity he could sell for a consideration and transfer to another, and the moment the proceedings of the town were concluded, and this equity ripened into a legal claim against the town, it vested as such in Ketchum, the assignee. The bonds in question were issued upon the claim created by this enlistment, and the proceedings at the special town meeting, and in satisfaction of such claim. They were payble to bearer, and not to any particular individual, and delivered to the defendant. As the defendant had no right to them, and no right to the bounty, he must be deemed to have taken and held them as a trustee for the real owner.

Carver *v.* Creque.

It appears expressly, from the testimony of Ketchum, that it was agreed between him and the defendant that he, and not the defendant, was to have this town bounty if the town should determine to give bounties. This is not contradicted. But I do not think this agreement between the defendant and Ketchum changes essentially the legal aspects of the case. The defendant never had any interest in this bounty, and could confer no right to it upon any one, unless authorized by McMahon or his assignee. When the bonds were issued to the defendant upon this certificate of enlistment, Ketchum, or the plaintiff as his assignee, might either refuse to recognize the issue to the defendant as valid, or authorized, and still look to the town for the bounty, or ratify the issue and claim the obligations as his property. The bonds were mere choses in action, and by claiming them or the proceeds, the plaintiff must be deemed to have ratified the issuing of the bonds by the town, in satisfaction of the claim for the bounty, as against the town. These bonds the defendant has converted by delivering them up to the obligor and receiving the money due by their terms. He ought to have delivered them to the plaintiff, to whom as assignee of Ketchum they legally belonged; but having converted them to his own use, I see no reason why this action may not be maintained. It is, I think, much stronger in the plaintiff's favor, than was the case of *Decker* v. *Mathews*, (2 *Kern.* 313.) The principle upon which this case turns is not the same, precisely, because in that case the wrongful act of the defendant gave vitality to the note, and made it a valid obligation against the plaintiff, as maker. Here the defendant made himself the plaintiff's agent, in having the bonds issued and delivered to him, and they became in his hands, forthwith, the plaintiff's choses in action, which he without right converted.

I am of the opinion, therefore, that the order granting a new trial should be affirmed.          Order affirmed.

[MONROE GENERAL TERM, September 3, 1866. *Welles, E. D. Smith,* and *Johnson,* Justices.]