(37 Misc. Rep. 492.)

### SCHANZ et al. v. MARTIN.

(Supreme Court, Appellate Term. March, 1902.)

1. CONVERSION—COLLECTION BY EMPLOYE.

Where a salesman, without authority from his employer, collected the price of goods sold, he is liable to his employer in an action for conversion.

2. SAME—RATIFICATION.

An action by an employer against his salesman, who has collected money without authority, is a ratification of the collection, but not of the conversion of the money.

Appeal from municipal court, borough of Manhattan.

Action by Joseph Schanz and Eugene F. Wilson against Hubert Martin. Judgment for plaintiffs, and defendant appeals. Affirmed.

Argued before FREEDMAN, P. J., and GIEGERICH and GREENBAUM, JJ.

Sheridan S. Norton, for appellant.

Leslie & Miner (Warren Leslie, of counsel), for respondents.

GIEGERICH, J. The defendant was a salesman of the plaintiffs, and, without authority, collected from one of their customers the price of two suits of clothes. They brought an action against the customer, but, upon discovering that the defendant had collected for the suits, discontinued that action, and began this one against the defendant for conversion, and obtained judgment. The appellant challenges the judgment, on the ground that the plaintiffs failed to show (as is requisite to the maintenance of an action for conversion) either ownership of the money or an immediate right to its possession. The appellant seems to concede that an action for money had and received would lie, on the theory that by bringing such an action the plaintiffs would ratify the otherwise unauthorized act, thereby imposing upon the defendant an obligation, based on the theory of a quasi contract, to turn over the money. Keener, Quasi Cont. 167. No reason is obvious, however, why an action for conversion will not lie as well. The discontinuance of the suit against the customer, and the institution of a suit of any character against the defendant, would be a ratification of the act of collecting, and a retroactive authorization to the defendant to collect. "A subsequent ratification is equivalent to an original command." Doty v. Wilson,

14 Johns. 379, 382; Hamlin v. Sears, 82 N. Y. 327, 331. Omnis
ratihabitio retrotrahitur, et mandato priori æquiparatur. Brown,
Leg. Max. 781; Story, Ag. § 445. But it does not necessarily fol-
low that there would be an authorization to retain, as well as to col-
lect, the money. An agent may be authorized both to collect and
to retain money, and mingle it with his own or other money, in
which event there are numerous authorities that he is not liable for
conversion. Walter v. Bennett, 16 N. Y. 250; Conaughty v. Nich-
ols, 42 N. Y. 83; Vandelle v. Rohan, 36 Misc. Rep. 239, 73 N. Y.
Supp. 285. Or he may be authorized to collect a single claim and
to deliver to his principal the identical money received, in which case
he is liable for conversion. See Farrelly v. Hubbard, 148 N. Y. 592,
43 N. E. 65; Donohue v. Henry, 4 E. D. Smith, 162. The former is
the usual situation where an agent has authority to make collec-
tions generally, or to make more than one collection, but where
such authority is confined to a single case, as here, it is plain that
there is not merely a debt owing from the agent to the principal,
but an obligation to pay over the identical money. The case of
Farrelly v. Hubbard, supra, is quite in point. The court there said
(pages 594, 595, 148 N. Y., and page 66, 43 N. E.):

"The plaintiff assigned to the defendant, by an instrument in writing, the
wages or salary due him from the New York, Lake Erie & Western Railroad
Company (in whose employ he then was), for the month of December, 1886,
constituting him his attorney to collect and receipt for it. * * * The
language of the contract of assignment, already quoted, is perfectly clear,
and shows that the defendant in the action in justice's court was acting solely
as the servant of the defendant in this action, and it was his duty to have
immediately carried the money or check to his assignee, and, not doing so,
he became liable for conversion upon failure to pay over on demand."

In Donohue v. Henry, supra, it was said (page 163):

"It is objected that trover will not lie for this item of money. That is true
when the money has gone into the defendant's possession with the plaintiff's
assent, and permitted to be mixed up with his own money; but where money
is received from a third person, the party to whom the money belonged has
a right to insist upon receiving the identical money so collected, and if not
delivered on request may maintain a possessory action therefor."

The case of Carver v. Creque, 48 N. Y. 385, is nearest in its facts
to the present one of any we have been able to find. There the
defendant induced the supervisor of a town to deliver to him bonds,
payable to bearer, issued in payment of a bounty offered by the
town to such as would enlist in the military service. The bounty in
payment of which the particular bonds in question were given was
rightfully due to the plaintiff's assignor. The court (at page 389)
said that the plaintiff or his assignor "might have compelled the
issue of a town bond, or the payment of the money, by a proceeding
against the town, or he might have maintained an action against the
supervisor, who, without any evidence of the defendant's authority
to receive it, voluntarily delivered his bounty to the defendant"; or
might elect to pursue the defendant. It was held that the action
for conversion was maintainable, the court remarking that "the de-
fendant got possession wrongfully of the property of another." It
is true that in the latter case the property converted was bonds

rather than money; but it is also true that the bonds were not specifically intended for the plaintiff's assignor, or for payment of his claim, but were bonds payable to bearer, and issued and received in lieu of money, which, it would appear, might have been demanded instead. In fact, at the outset, there was, as here, merely a claim without a right to any specific thing. Were it not for this similarity between the two cases, we would be disposed to go further and draw a distinction between the situation and relative rights and liabilities of the plaintiffs, the defendant, and the customer, toward each other severally, on the one hand, at the time when the money was collected, and, on the other hand, at the time when the plaintiffs elected to abandon their claim against the customer, and look to the defendant. There might be ground for argument that the plaintiff's right to the money accrued only when they made their election and demand, and that, if the defendant did not still have it at that time, he could not be said to have converted the money of the plaintiffs, but that of the customer, who alone was entitled to it up to the time the plaintiffs elected to ratify the defendant's act in collecting. We consider, however, that the case just cited is against such a distinction, as the facts which would warrant drawing it were equally present there. It appears that, when demand was made in that case for the bonds, the defendant replied that he had sold them or passed them away. Although the point was not discussed by the court of last resort, it is evident from the result that it must have deemed that, for the purposes of the action, the right of possession was in the plaintiff or his assignor from the time the bonds were received by the defendant, and not simply from the time when the election was made to pursue him, rather than to sue the town or the supervisor. This point was considered, however, by the general term below, and was necessarily involved in the affirmance, since the question was fundamental to the recovery. The language of the general term (46 Barb. 512, 513) on the point was as follows:

"As the defendant had no right to them [the bonds] and no right to the bounty, he must be deemed to have taken and held them as a trustee for the real owner. * * * Here the defendant made himself the plaintiff's agent, in having the bonds issued and delivered to him, and they became in his hands, forthwith, the plaintiff's choses in action, which he without right converted."

But, irrespective of the authority of Carver v. Creque, it might well be said that, on the facts disclosed in this case, it rested upon the defendant to show that he did not still have the money when the plaintiffs demanded it of him.

The appellant's claim that the plaintiffs are bound by what he calls their election to sue the customer, rather than him, takes no account of the principle that there can be no election without knowledge of the facts. It was not until the trial of the action against the customer that the plaintiffs first learned that the bill had been paid to the defendant, and of their consequent right against him. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.