## HOPE *vs.* LAWRENCE and ST. JOHN.

A request to charge must rest on facts which are, at least, possible in the case, in some aspect of the evidence; and where an hypothesis or contingency, not resting upon any evidence in the case, is the basis of a request to the judge for a direction to the jury, it is no error to refuse to give the direction asked for.

On the 27th of January, 1865, the plaintiff instructed the defendants, his brokers, if gold rose to 217 that afternoon, to sell his gold coin which they then held. He called on the defendants the next day, and inquired if they had sold; being informed that when gold was about 217, the market looked very strong, and they did not sell, he made no claim that they had injured him, or violated his instructions, by neglecting to sell at 217, although he was aware the price had advanced. On the 30th of January, he wrote to the defendants, saying: " I took a note of your reply, and determined to wait the future course of the market, before writing to you." On the 4th of February the defendants sold the gold at 207¾. *Held* that the plaintiff, by his silence when he ought to have spoken, was estopped from charging the defendants with the loss arising from the subsequent depreciation in the price of gold coin. (SUTHERLAND, J, dissented.)

*Held, also,* that, assuming the order to sell to have been peremptory, the defendants were bound to sell when the price of gold reached 217. That the plaintiff was entitled to recover only the actual loss sustained by him by reason of the neglect to obey such order, and that the defendants were not to be charged with any loss from their neglect to sell at a price above the limit.

*Held, further,* that a tender by the plaintiff of $1445.15, admitted to be due to the defendants, which amount was based upon the price of gold at 217, was an admission that so much was due; and that damages should not have been allowed at a rate more unfavorable to the defendants,

Hope *v.* Lawrence.

A principal must, within a reasonable time, dissent to the act of his agent, if the latter has acted contrary to instructions. He cannot wait to see whether such action shall result advantageously, or disadvantageously, and then determine what he will do.

An appeal having been taken from an order refusing a new trial, the court, at general term, reversed the order and granted a new trial, on account of a misdirection of the judge to the jury, directly affecting the result adversely to the defendants, although no exception was taken at the trial to such direction by the judge

APPEAL from a judgment against the defendants on a verdict at the circuit, and from an order denying a motion for a new trial, made at special term, upon a case or bill of exceptions. The action is to recover for the conversion of forty-five shares of bank stock belonging to the plaintiff.

The answer alleges that thirty-five shares of the said bank stock were sold by the defendants to pay a sum of money due to them from the plaintiff, arising out of transactions in gold coin and stocks, wherein the defendants were brokers and agents for the plaintiff ; the said bank shares being held by the defendants as security against loss upon such transactions, with authority to sell the same ; that the defendants have tendered to the plaintiff the remaining ten shares of bank stock, after realizing the sum due from the plaintiff to the defendants, with the costs of the action, which he has refused to receive.

At the trial it was conceded that the plaintiff was indebted to the defendants in some amount of money arising out of the transactions mentioned in the answer, and that the bank shares were held as security therefor, with authority to sell the same, upon neglect of payment, but the plaintiff insisted that the indebtedness was not so large as the defendants claimed it to be, and that the defendants had neglected to sell $5000 in gold coin, which they held for the plaintiff, according to instructions given, as he alleged, whereby a loss had been sustained, which had increased the demand claimed by the defendants, and formed a part of the sum to realize which the said bank shares had been sold. The balance

claimed by the defendants to be due them, and for which they sold the said thirty-five shares of bank stock, was $1948.73. The plaintiff made tender of the sum which he admitted to be due to the defendants, on two different occasions. On the first, he tendered $1234.23, and on the second occasion, $1444.15, and demanded his forty-five shares of bank stock, which the defendants refused to deliver him. The sufficiency of the notice of the time and place of the sale of the bank shares, was also conceded.

The plaintiff was the only witness sworn on his behalf. He testified that, on the 27th of January, 1865, between 12 and 1 o'clock, he saw the defendants, and instructed them, if gold rose to 217 that afternoon, to sell his $5000 of gold coin, which the defendants then held. It was admitted that the market rate was then $212\frac{1}{2}$ for gold coin, and continued at that rate until 3 o'clock P. M. The plaintiff saw the defendant St. John again the next day, and asked him if they had sold. He said the market looked strong when gold was about 217, and he did not sell. On his cross-examination, the plaintiff testified that "the words of Mr. St. John were, if the market reached 217 in the afternoon, and did not look very strong, he advised me to sell, and I told him to do so. I might have told them to sell at about 217. I now think I did." And, again, "the instructions I gave them were, as far as I can recollect the words, 'if the market reached 217 that afternoon, to sell.'" A letter written by the plaintiff was then shown him, in which he states that, "after the interview, gold gradually advanced, and closed on Friday night (the 27th) at 218, and sold at the evening board at $219\frac{1}{2}$. It opened on Saturday morning at about 220, gradually falling back, till, at the time I saw you, it stood at about $215\frac{1}{2}$. I did not make any demur about it then, but took a note of your reply, and determined to await the future course of the market before writing to you." The letter also refers to the order, given on the 27th, to sell at 217. It was written by the plaintiff, and received by the

defendants on the 30th of January. The defendants answered the letter the same day, claiming that the matter was left entirely in their discretion; that the market did advance, as the plaintiff stated in his letter, looked strong at 217, selling afterwards at 220, at which it looked strong until it broke; admitting that their judgment had been at fault, but claiming that no blame could attach, as they had done what seemed best, and the order was discretionary with them.

The defendants were also sworn as witnesses, and gave the only testimony offered in their behalf. They testified, in substance, that they advised the plaintiff, on the 27th January, that the price might touch 217 that afternoon, and, unless the market looked very strong, that he had better sell at about that price. If it looked strong, that he might get more. The plaintiff said : " I will leave it to your judgment in the matter. I said, there is no judgment in the matter at all, and if I should miss the market, you must not blame me ; I will do the very best I can for you. I said if it looks strong at 217, I will hold it for you. He said, very well ; do the best you can ; I know you will do the best you can for me. He then left the office."

The defendants rendered their account to the plaintiff on the 2d February following, showing a balance of $12,282.48 due them from the plaintiff. The $5000 of gold coin was afterwards sold for the account of the plaintiff, on his neglect to pay the said balance, at 207¾, and the net proceeds being carried to his credit, there remained due, as the defendants claimed, the sum of $1948.73. The defendants then gave the plaintiff notice that they would sell the bank shares in their hands, at a day and place named, and they accordingly sold thirty-five shares, realizing a trifle over $2000, from which they deducted their claim, and offered to pay the balance to the plaintiff, and to return the ten shares of bank stock remaining in their hands.

*Wm. F. Allen,* for the appellants.

*A. R. Dyett,* for the respondent.

LEONARD, P. J. The defendants' counsel has urged, as error, the refusal of the judge, at the trial, to charge the 'jury as requested, " that if the order, on the 27th of January, was that the defendants should sell the gold, if the market reached 217, on that day, and, in fact, it did not reach 217 on that day, then the defendants were justified in acting under the previous orders, if any, given by the plaintiff to the defendants."

The proposition rests upon an hypothesis that did not exist. The defendants' letter of January 30, in answer to that of the plaintiff of the same date, conceded, as a fact, that the price did reach 217 on that day, and at the evening board reached $219\frac{1}{2}$. There was no doubt that the contingency mentioned in the request did happen. Nor is there any evidence of the existence of any previous orders. A request to charge must rest on facts, which are, at least, possible in the case, in some aspect of the evidence ; and where an hypothesis, or contingency, not resting upon any evidence in the case, is the basis of a request to the judge for a direction to the jury, it is no error to refuse to give the direction asked for.

I think the defendants have not presented any error, arising at the trial, upon which an exception was taken.

The case comes here on an appeal from an order denying a motion for a new trial at the special term, involving a review, upon the evidence, as well as upon the law. Some considerations have been presented, to show that the defendants were prejudiced, by certain observations of the judge, as to the effect of the omission of the plaintiff to insist upon it, or claim that the defendants had injured him, or violated his instructions, by neglecting to sell at 217, when informed on the 28th of January that his gold had not been sold.

Hope *v.* Lawrence.

The plaintiff in his letter of January 30th referring to the defendants' statement in answer to his inquiry whether they had sold, says : "I took a note of your reply, and determined to wait the future course of the market, before writing to you." It will be remembered that the market was then at $215\frac{1}{2}$, and that it subsequently continued to fall until the gold was sold on the 4th of February following at $207\frac{3}{4}$.

The judge says in his charge, referring to the sentence quoted above from the plaintiff's letter : "What does that mean ? Suppose gold had gone up to 225 ; of course the suit would never have been brought, if he had ordered it sold, and it had been sold then. Perhaps he waited to see. It is not inconsistent with the plaintiff's writing. He might say, I will wait and see, and if I don't suffer any wrong, I will say nothing about it. I don't know as that is inconsistent, or any thing to injure plaintiff's right to recover."

The judge here conveys to the jury the idea that it is not important that the plaintiff did not at once state his claim that the defendants had disregarded his instructions, and had thereby made themselves liable for any loss sustained in consequence. I think it must be assumed that the jury have by their verdict found that the defendants were directed by the plaintiff, on the 27th of January, to sell the gold if the price touched 217. It appears, however, to be extremely doubtful whether the defendants understood the order as an absolute direction to sell at that price, and not in any manner dependent on the exercise of their judgment or discretion. The plaintiff states, on his cross-examination, that the defendants' advice to him was to sell at 217, unless it looked strong, and that he told the defendants to do so. If that was the position in which his directions were left with the defendants, they might well believe that the sale was to be made, only, if the market, in case gold rose to the price named, did not, in their judgment, look strong ; clearly involving an exercise of discretion. It is true the plaintiff afterwards stated the order as having been positive and unconditional " to sell."

He states, also, that the direction might have been to sell at about 217. This form would give some latitude of discretion. There is nothing in the evidence giving the slightest indication of bad faith on the part of the defendants, or of an intention to assume the responsiblity of disregarding positive directions. The effect of the omission of the plaintiff, when he inquired, the next day, of the defendants if they had sold, to notify them that his instructions on the 27th were absolute to sell, if the price reached 217, was to put them into a feeling of security, and involve them in further loss, if the price of gold continued to decline. The whole risk of the market was on them, while the plaintiff enjoyed the advantage to accrue in case the price advanced up to or above the limit of 217. The plaintiff was aware of this, if he had given absolute instructions to sell at a price which the market had touched. His letter shows that he knew precisely how the price had advanced, and that he intentionally remained silent to see how the market would fluctuate after that. Had he then stated the position now claimed in this action, the defendants might have closed the gold transaction at $215\frac{1}{2}$, the then market price, being only $1\frac{1}{2}$ per cent below the plaintiff's limit, an involving a loss of $75 only. What the market price was on the 30th of January, when the plaintiff advised the defendants of his claim on them, does not appear; but on the 4th day of February, when it was sold, the price appears to have fallen to $207\frac{3}{4}$, the price realized. The defendants, by the silence of the plaintiff, had no opportunity to elect, whether to continue to hold, or to sell, the gold of the plaintiff, then in their hands at their own risk as to the price, without the smallest chance of realizing any benefit for themselves, if the position of the judge at the trial is correct. But, in my opinion, what has been remarked above, as to the practical effect upon the rights of the defendants, arising out of the silence of the plaintiff, when he should have spoken, establishes that the plaintiff is estopped from inflicting upon the defendants any damage for the subsequent depreciation in

Hope *v.* Lawrence.

the price of gold coin. The plaintiff should be held to assume all the risk of further depreciation, when he saw that the defendants were resting under the impression that they had missed the market by an error of judgment. He asked the reason why the defendants had not sold, and was told that the market looked strong when it was about 217, and thereupon they did not sell. It was evident to the plaintiff, from this answer, that the defendants were acting on their discretion.

The verdict, under the charge, has fixed the price at which the defendants are to pay the plaintiff for his gold, at 220, the highest price which it reached on the 27th and 28th January. If the defendants had acted in bad faith, the rule of damages would permit this increase beyond the limit fixed by the plaintiff at which the defendants ought to have sold, assuming the order to have been peremptory. The plaintiff should recover only his actual loss sustained by the neglect of his order to sell at 217. Assuming the direction of the plaintiff to be as the jury have found, peremptory, the defendants were bound to sell according to his order, when the price reached 217. The plaintiff sustained no further damage by the price advancing beyond that figure, and then receding. All the plaintiff can claim is obedience to his order. Had the defendants sold above the limit, it would have been for the plaintiff's benefit; but if we assume that the defendants were acting without authority in holding when the market rose above the limit, it clearly could not have happened from any intention to injure the plaintiff, but must have been from the hope or expectation that the plaintiff would realize an increased price. I think the defendants are not to be charged with any loss from neglect to sell at a price above the limit. This also appears to have been the opinion of the plaintiff when he made the tender of $1444.15, which was based upon the price of gold at 217. The tender of that sum was an admission that so much was due, and damages

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

CLERKE, J. concurred.

SUTHERLAND, J. dissented.

[NEW YORK GENERAL TERM, November 4, 1867. *Leonard, Clerke* and *Sutherland,* Justices.]