PATTERSON, J.
—This cause was tried in the court of common pleas in and for the city and county of New York, and resulted in direction by the trial judge of a verdict for the plaintiff, subject to the opinion of the court at general' term. Erom the record before us, we understand the facts to be that Mr. Bradley, a cloth manufacturer at Leeds, in England, and the assignor of the plaintiff herein, employed one Beaumont, of the city of New York, to make sale of goods in the United States of America and Bañada. In January, 1890, Beaumont called upon the defendants, who were cap manufacturers in the city of New York, and obtained from them an order for goods made and-to be delivered by Mr. Bradley. The order was given under circumstances testified to by Simon S. Hirschberg, who, at the time mentioned, was the manager of the defendants’ business. The only testimony in the case as to what was said and done by Beaumont at the time the order was given comes from the witness Hirschberg. He states that Beaumont called upon him, and wanted an order for some goods, and that, being asked what inducements were offered Beaumont replied that he would give to the defendants, exclusively, all patterns they might order, so that they would have no competitor. This witness knew that Beaumont was the represen *610 tative of Bradley, and he declares that the terms of the transaction were agreed upon as follows: “ Pay cash 3-J- per cent, dis-' count, or if you [defendants] want four or five months, it will be net; and if jmu can pay me the money, you can save save the price of exchange.” The witness then declares that he stated to Beaumont that he did not know much about the importing business, to which Beaumont replied: “Pay me in American money and I will send it over in English money.” And so the order was given. It further appears by the record that the goods were shipped by steamship from England in the month of April, 1690. At the same time there was sent an invoice, and according to Bradley’s statement, a letter dated April 23, 1890, in which the invoice was inclosed. In that letter, Mr. Bradley wrote to the defendants, among other things: “Kindly favor me with your remittance on receipt of goods, and oblige.” The witness Ilirschberg testifies that the invoice was received, but that he had no recollection of receiving the letter accompanying the invoice. But he did receive a letter from Bradley under date of August 20, 1890, inclosing a statement of the account between the defendants and Bradley, and which contained the following: “Will defendants you kindly send check for above amount by return or in case you have remitted part, kindly send balance to recover.” The defendants did not pay for the goods on receiving them, and thereupon the contract became a time contract, and according to-the testimony of Mr. Hirschberg, the due date for the payment was October, 1890. On September 22d, Beaumont called upon the defendants, and asked for the payment of the bill to him. He was paid $100 on account. On October 2, 1890, he was paid $50 on account. The balance of the'whole bill, some $500, was remitted by the defendants direct to Bradley, in November, 1890. This action was brought to recover the $150, and the defense set up is payment to Bradley through his agent, Beaumont.
It appeared in evidence that Beaumont was authorized to make-sales of Bradley’s manufactures, but that there was a distinct limitation upon his authority to collect moneys. He was prohibited from collecting unless specially requested so to do by Bradley. It-is not important to consider whether it was error to admit in evidence the written agreement between Bradley and Beaumont showing this limitation, for the transaction between the latter and the-defendants may be considered irrespective of that written agreement. It is plain from the nature of the transaction, and from the testimony given by the witness Hirschberg, that Beaumont was merely a solicitor of orders to be filled bv his principal in England; the goods to be shipped directly from England to the purchaser. Beaumont never had possession of the goods, or any part of them, and was not in any way connected with their delivery. It was also distinctly understood that the purchase price was to be remitted to-England, either directly or through Beaumont. The apparent authority, therefore, which Beaumont possessed, was hot as extensive as claimed by the defendants. They contend that Beaumont is to be treated as a general agent, having power to do everything that the principal might do with reference to the transaction. That *611 Beaumont had the power to arrange all the conditions of the sale, including the price and the time of. delivery, is, doubtless true, because those details would constitute terms of the orders; but wlmt transpired between the witness Hirschberg and himself respecting the remittance would not justify the inference that the purchase price, or any part of it, was to be paid to Beaumont, unless for the distinct purpose of being remitted at once by him to his principal. But even conceding, for the sake of the argument, that all the circumstances surrounding the transaction might originally have justified Hirschberg in believing that he was at liberty to pay money to Beaumont to be forwarded, vet if, before any payments were made he was advised by the principal to make those payments directly to him, he would not be excused for paying contrary to that direction. Evidence appears in the case that such direction was given, and it is furnished by Hirschberg himself. On the 20th of August, 1890, Mr. Bradley wrote from Leeds the letter inclosing the statement, and containing the request for remittance above quoted. The meaning and effect of this letter, and the sense in which Hirschberg understood it, are not to be mistaken, for be testifies that on the day he received, that letter, or the day afterwards, he showed it to Beaumont, and had a conversation with him respecting it, and told him of the agreement he had made, and thereupon Beaumont said: “Leave that to me, and I will write to them and it will be all right.” Hothing was paid until long after this conversation. It therefore appears that Hirschberg knew that direct payment was requii’ed, and that he left it to Beaumont to write to Mr. Bradley concerning the subject. When he subsequently paid the two amounts on account to Beaumont, without waiting to hear further from Bradley, he did it at the defendants’ risk, and. without authority from the plaintiff.
Our attention has been called to various authorities which are claimed by the defendants to sustain their contention as co Beaumont’s relation to the transaction. Scott v. Hopkins, 2 St. Rep. 324, is especially relied on as determining the precise question involved here. Ho authority is cited in the opinion of the court in that case, but, from the facts as they are there made to appear, it would seem that Hopkins made a contract to buy a barrel of coffee from Scott’s traveling salesman. All the terms of the contract were settled, and the coffee, was delivered without any bill therefor having been sent by Scott, and without any notification whatever from Scott as to the manner of payment or requiring it to be made to him. The salesman subsequently collected the amount due, and the general term held that there was apparent authority in the salesman to receive the price. This decision cannot be regarded as laying down á general rule of law, and it appears to be contrary to Basset v. Lederer, 3 Thomp. & C. 671, and Gallup v. Lederer, Id. 710. Putnam v. French, 53 Vt. 402, is also cited. In that case it was held that a traveling salesman authorized to give credit has implied authority to receive payment, and that a purchaser would not be bound by constructive notice to the contrary where the words “payable at office” appear on the *612 bill rendered. But in that case the court laid particular strees upon a custom, proved as existing in New England, and affecting transactions of that character, to make payment either to the principal or agent. Trainer v. Morison, 78 Me. 160, also cited by the defendants, holds that an agent authorized to sell by sample may collect the hill where there is no prohibition known to the customer, and that a notice not prominently printed on the bill requiring payments to be made at the office of the seller does not affect the purchaser. But that case does not apply here, for the reason that Bradley’s requirement contained in the letter of August 20, 1890, was construed by the defendants’ manager himself as a notice that payment was to be made direct to Bradley, and was the subject of a conversation between him and Beaumont, and the original arrangement contemplated remitting the purchase price to Bradley either directly or through Beaumont. If there is notice, direct or implied, to pay to a principal, and therefore not to the agent, payment to the latter will not bind the principal, as has been held in the case of brokers. Higgins v. Moore, 34 N. Y. 417: Wright v. Cabot, 89 N. Y. 570; Bassett v. Lederer, 3 Thomp. & C. 671; Gallup v. Lederer, Id. 710. We are therefore of the opinion, under the special facts of this case, that the payments to Beaumont were insufficient to discharge the liability of the defendants to the plaintiff for that much of their indebtednéss.
Exceptions appear in the record to a refusal of the court to grant an application for an adjournment of the trial on account of the absence of Beaumont. This exception does not call for any' consideration, for there was no legal reason presented to the court which should-have impelled it to postpone the trial, and so the objections to questions put to Bradley respecting Beaumont’s authority to collect are not material in the view we have taken of the relations of the parties and of the main question involved.
The exceptions are overruled, and judgment ordered upon the verdict, with costs.
All concur.