CARLISLE v. NORRIS et al.

(Supreme Court, Appellate Division, Second Department.   May 12, 1911.)

1. PRINCIPAL AND AGENT (§ 24*)—EXISTENCE OF RELATION—QUESTION FOR JURY.

   Whether the manager of brokers buying and selling stock on margin was the agent of the brokers in a transaction whereby he sold the stock of a customer and misapplied the proceeds, or the agent of the customer, *held*, under the evidence, for the jury.

   [Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 24.*]

2. ACCOUNT STATED (§ 5*)—ACCEPTANCE OF ACCOUNT RENDERED.

   An account rendered is an account stated when its correctness is expressly or impliedly assented to.

   [Ed. Note.—For other cases, see Account Stated, Cent. Dig. § 16; Dec. Dig. § 5.*]

3. ACCOUNT STATED (§ 5*)—NATURE.

   To constitute an account stated, the debtor and creditor must mutually agree as to the allowance or disallowance of their respective claims, and there must be proof of their express or implied assent to the account rendered before one may not impeach it except for fraud or mistake.

   [Ed. Note.—For other cases, see Account Stated, Cent. Dig. § 16; Dec. Dig. § 5.*]

4. ACCOUNT STATED (§ 20*)—EVIDENCE—QUESTION FOR JURY.

   Whether an account rendered had become an account stated by assent, express or implied, to its correctness, *held*, under the evidence, for the jury.

   [Ed. Note.—For other cases, see Account Stated, Dec. Dig. § 20.*]

Appeal from Trial Term, Kings County.

Action by Jay F. Carlisle against Alfred L. Norris and others. From a judgment for defendants, plaintiff appeals.  Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

I. R. Oeland, for appellant.
Arthur C. Rounds, for respondents.

RICH, J.   This action was brought to recover the value of 200 shares of American Tobacco stock, which was owned by plaintiff and sold to W. B. Beekman & Co. by one Brouwer, the general manager of the defendants.  It was the duty of Brouwer to require additional margins of customers when it became necessary in the course of business.  During the years 1905–1907 the plaintiff was a customer of the defendants.  They bought and sold stocks for him on margin, executed his orders.  All of his private and stock exchange business went through their office.  They acted as his agents, financing his accounts, handling his securities, and were paid for such services.  In 1905, at Brouwer's suggestion, the plaintiff gave him access to his safe deposit box in the Stock Exchange building, in which he kept his securities and authority to use his securities if necessary during his absence upon his vacation.  The securities were in blank, and the

plaintiff signed printed forms for their transfer, to be attached to the certificates if used. In June, 1906, the defendants had a loan in the National City Bank for which they pledged 500 shares of plaintiff's American Tobacco stock which stood in their name and was in their possession, as collateral, 200 shares of which were represented by two certificates of 100 shares each, numbered A.9,371 and A.9,372. In the preceding month (May) Brouwer produced to defendants' cashier 200 shares of American Tobacco stock, informed him that plaintiff's account needed more margin, and directed him to place such stock to its credit, which was done. On June 26th Brouwer said to the cashier that plaintiff's account did not need the additional margin and directed its return to him. The cashier accordingly handed to Brouwer 200 shares of American Tobacco stock represented by two certificates of 100 shares each, numbered A.9,473 and A.9,564, making an entry on defendants' books of the delivery of such stock to plaintiff. At some time between June 26th and June 28th, some one representing the defendants substituted the two certificates, A.9,473 and A.9,564, for plaintiff's two shares pledged to the bank as collateral to defendants' loan for the two certificates numbered A.9,371 and A.9,372, and the stock represented by the latter certificates was on June 28th sold by Brouwer to W. H. Beekman & Co., who gave their check therefor, payable to the defendants. At that time the defendants had an account with one W. H. Bird, in which Brouwer was interested, on which Bird owed more than $41,000. By Brouwer's direction, the money received on Beekman & Co.'s check was credited to Bird and his account correspondingly decreased. Brouwer subsequently became a defaulter. When these transactions took place, the plaintiff was in Europe.

The plaintiff's contention is that the defendants never accounted to him for the 200 shares of stock or its avails. The defendants contend that in the transaction Brouwer was acting as the agent of the plaintiff, and that after the return of the latter from Europe an account was stated between him and the defendants in which they accounted to him for all of his stock that they had handled.

The two crucial questions presented are: First, whose agent was Brouwer in the transactions referred to?

[1] If he was acting for the defendants as their representative, they are bound by his acts. Ring v. Long Island Real Estate Exchange, 93 App. Div. 442, 87 N. Y. Supp. 682; Fishkill Savings Inst. v. National Bank, 80 N. Y. 162, 36 Am. Rep. 595. There is evidence that he had at times attended to private business for plaintiff, and he may have been acting for him, and not as the representative of defendants. The question can only be decided after a consideration of the evidence throwing light upon the relations of the parties, and is one of fact for a jury. Merkel v. Lazard, 114 App. Div. 25, 99 N. Y. Supp. 686.

And, second, was there an account stated between the parties?

This was likewise a question of fact for determination by the jury. Plaintiff testified that at the request of defendants' expert accountant he O.K.'d defendants' books. "I did not go over those accounts in

detail at all. I am not capable of it. I am not a bookkeeper. I don't remember what he said to me when he asked me to O. K. it. At that time when I O. K.'d these pages, I did not know that there was an entry there of 200 shares of stock delivered to Brouwer for me on the 26th of June, 1906. I had no knowledge of that transaction at all at that time." Plaintiff denies that he ever assented to the correction of defendants' accounts, though of course they are not concluded by this denial.

[2] An account rendered becomes an account stated when its correction is assented to. Lockwood v. Thorne, 18 N. Y. 285. This assent may be implied from circumstances. Spellman v. Muehlfeld, 166 N. Y. 245, 59 N. E. 817.

[3] To constitute an account stated, the debtor and creditor must mutually agree as to the allowance or disallowance of their respective claims, and there must be proof in some form of an express or implied assent to the account rendered before a party can be so far concluded that he can only impeach it for fraud or mistake. Eames Vacuum Brake Co. v. Prosser, 157 N. Y. 290, 51 N. E. 986.

[4] I am of the opinion, therefore, that the plaintiff's exceptions to the refusal to submit the question to the jury, and to the direction of a verdict for the defendants, present reversible error.

The judgment should be reversed, and new trial granted; costs to abide the event.

JENKS, P. J., and CARR and WOODWARD, JJ., concur. THOMAS, J., concurs in result.