BERNARD J. GOLDSTEIN, Respondent, *v.* CHARLES D. TANK, Appellant.

(County Court, Onondaga County, August, 1911.)

Principal and agent — Rights and liabilities of principal as to third person: Extent of actual authority of agent to bind principal (including implied authority) — Power to receive payment or collect debt: Ratification — Failure to repudiate as ratification.

Though a mere solicitor of orders, who at no time has possession of the goods he sells, has no implied authority to receive payment, yet, if the payment is made to him and the principal has knowledge thereof, the latter is bound to promptly repudiate the payment and notify the purchaser; and, if, instead, the principal demands the money from the agent, and endeavors to obtain payment from him, and makes no demand upon the purchaser for more than two months, nor until the efforts to collect from the agent have proved unavailing, he thereby ratifies the act of the agent in receiving the payment and cannot thereafter maintain an action against the purchaser to recover the price.

APPEAL from a judgment of the Municipal Court of the City of Syracuse in favor of the plaintiff, rendered after a trial before one of the judges of said court without a jury.

Edgar F. Brown, for appellant.

Louis L. Waters, for respondent.

Ross, J.    This action was brought to recover the purchase price of a chemical fire engine, ordered by the defendant of

the plaintiff, who does business in New York city under the name of Ajax Fire Engine Works. The sale was solicited by one F. L. Webb, Jr., residing in Syracuse, N. Y., under the name of The Syracuse Chemical Fire Extinguisher Company. The transaction was entirely by correspondence and, in brief, is as follows:

On November 15, 1910, the plaintiff wrote to The Syracuse Chemical Fire Extinguisher Company, quoting prices of fire extinguishers.

On November 18, 1910, the defendant signed a postal card, which was directed to plaintiff and received by him, asking the plaintiff to send one of his chemical fire engines for a trial test and examination and stating that, if he decided within thirty days not to keep the engine, he would notify the plaintiff who was to pay the return freight charges.

On November 19, 1910, the plaintiff wrote the defendant a letter which contained the following: " We thank you for your order sent through our agents, The Syracuse Fire Extinguisher Company, and shipment will be made in a few days in accordance with our regular terms, which are, on approval for thirty days, freight pre-paid by us, and at the expiration of this period our bill becomes due, except if you should not notify us in the meantime to the effect that you do not desire to keep the engine, in which case we pay the return freight charges."

On November 19, 1910, the plaintiff wrote to Mr. Webb, stating that they had received an order from one of his customers (referring to the order in question) and stating that, as he does not find the defendant rated in any of the Mercantile Agencies, " we will require that you guarantee the account in question."

On November 22, 1910, a notice of shipment was sent to Mr. Tank, the defendant, with directions how to use the engine; also a letter notifying Mr. Webb of the shipment of the engine.

On January 5, 1911, the plaintiff wrote the defendant stating that, on November twenty-second, he had shipped to him a fire engine; that the purchase price of the same was

County Court, Onondaga County, August, 1911. [Vol. 73.

$185; that it became due at the expiration of thirty days, if not notified by the defendant that he did not desire to keep it, and that he had not received such notice, and asked for a remittance of the purchase price.

On January seventh, Mr. Tank wrote the plaintiff as follows: "The fire extinguisher for which you have sent me a bill, I ordered through Mr. Webb of The Syracuse Fire Extinguisher Sales Company, and have paid him for same about the middle of December." On the trial, Mr. Tank's check, dated December twentieth, payable to the Syracuse Fire Extinguisher Company for $145 was admitted in evidence, and the same was endorsed by Mr. Webb, and it was conceded that the check was paid.

On January 9, 1910, the plaintiff wrote to The Syracuse Chemical Fire Extinguisher Company as follows:

" GENTLEMEN.—We have this day received a letter from Mr. Charles D. Tank of Syracuse, N. Y., who states that he paid our invoice of November twenty-second to him, $185, to you, but so far we have not received remittance from you. This remittance should have been made to us direct, because we always bill our customers direct and do not bill agents. Inasmuch as he has paid you, you can send us the amount less your commission, which is $185 less $40, or, in other words, $145 net. Mr. Tank said he paid you about the middle of December so we are unable to account why you have not submitted it to us before this. Please give this your immediate attention and let us have check for $145 by return mail anl greatly oblige.

" Yours truly,
" AJAX FIRE ENGINE WORKS."

On February 9th another letter was sent by the plaintiff to The Syracuse Chemical Fire Extinguisher Company as follows:

" GENTLEMEN.— Our bank has returned our draft for $145, which was made on you in payment for the chemical engine shipped to Mr. Tank. We must now insist that you send us a check in payment of this amount by return mail.

We never gave you any authority to collect this money from Mr. Tank, and none of our agents in fact ever had authority to collect any money for us. Under the circumstances you are wrongfully keeping possession of our own money, and we must insist that you let us have a check in payment of the amount less your commissions by return mail, and failing to do so we will be compelled to place the matter in the hands of an attorney without further notice. Trusting to hear from you at once, we are

"Yours truly,

"AJAX FIRE ENGINE WORKS."

On February 15, 1911, the plaintiff again wrote to Mr. F. L. Webb, Jr., president, as follows: "We have your letter of the 14h inst. and in reply would state we will allow you until the 20th to send us the check in payment of the account; but that is the latest we will give you because you should have sent us the money a long while ago, inasmuch as you never had any right to collect it in the first place."

On February twentieth the plaintiff wrote The Syracuse Chemical Fire Extinguisher Company, stating in substance that unless the claim was paid by return mail they would place it in the hands of an attorney without further notice.

On March second a collection agency in New York city mailed to The Syracuse Chemical Fire Extinguisher Company, Syracuse, a notice as follows:

"Ajax Fire Engine Works, 95 Liberty St., New York City, has a claim against you of $145 which is past due. Please make immediate arrangements with them for the settlement of this claim and thereby save expense and preserve your credit.

"Yours truly,

"THE NORTH AMERICAN COMMERCIAL AGENCY CO."

On March fourteenth the same collection agency sent what it termed a second notice to The Syracuse Chemical Fire Extinguisher Company, stating in substance that to avoid trouble and expense of process of law to at once make satisfactory arrangements with the plaintiff.

It will be observed that the only communications which the defendant has had directly with the plaintiff were: *First,* the conditional order of November eighteenth, and, *Second,* the letter of January 7, 1911, which notified the plaintiff that he had paid the bill to Mr. Webb.

It will also be observed that, after the receipt of the letter of January 7, 1911, notifying the plaintiff that the claim had been paid by the defendant to Mr. Webb, the latter did not again communicate with the defendant until the formal demand was made for payment on March 31, 1911, before the commencement of this suit.

A mere solicitor of orders who at no time has possession of the goods he sells, has from such agency no implied authority to receive payment. Lamb v. Hirschberg, 1 App. Div. 519; Hahnenfield v. Wolff, 15 Misc. Rep. 133.

The burden of proof is on the party alleging ratification. 1 Mechem Agency, § 132. The conduct of the plaintiff, however, will be liberally construed in favor of the agent in effecting a ratification. Id., § 177; Codwise v. Hacker, 1 Caines, 527, 539, Kent, J.

So far as this case is concerned, a ratification is the confirmation or adoption of the unauthorized act of Webb in receiving payment from the defendant. There was no. disclaimer by the plaintiff to the defendant from the receipt of the defendant's letter of January 7, 1911, until the formal demand on March 31, 1911.

It is the duty of a principal to disavow the unauthorized act of his agent within a reasonable time after it comes to his knowledge. Hope v. Lawrence, 50 Barb. 258; Burnham v. Lawson, 118 App. Div. 389, in which it was held that, in the stock transaction disclosed in that case, a delay of twelve days in repudiating the transaction did not amount to a ratification thereof. Judge Ingraham, on page 392, while concurring in the result, thought that the transaction should have been repudiated at once. 2 Greenl. Ev., § 66; Mechem Agency, §§ 155, 157, in which the following language is used: "Many cases hold that the principal is bound to act at once upon receiving knowledge, but the better rule and the one supported by the majority of the authorities, is, that

if the principal desires to repudiate the transaction he must give notice thereof within a reasonable time after becoming fully informed; and that if he does not so dissent his silence will afford conclusive evidence of his approval. What shall be deemed to be a reasonable time depends in this case, as in others, upon the situation of the parties and the facts and circumstances of the case." And again, at section 157: "Where a person assumes in good faith to act as agent for another in any given transaction, but acts without authority, whether the relation of principal and agent does or does not exist between them, the person in whose behalf the act was done, upon being fully informed thereof, must within a reasonable time disaffirm such act, at least in cases where his silence might operate to the prejudice of innocent parties, or he will be held to have ratified such unauthorized act." Glor v. Kelly, 49 App. Div. 617.

It is true that, in the Glor Case, there was an express ratification, and also the additional fact that Carney, the person with whom settlement was made, had possession of the chattels sold; yet the duty of the principal to promptly repudiate an unauthorized act of his agent is emphatically stated by Mr. Justice Spring when he says (p. 619): "If the plaintiff sought to repudiate the authority of their agent, it was incumbent upon them to act fairly with Kelly, and without delay advise him they disavowed the transaction with Carney." And again on page 620: "The duty was upon them to speak when confronted with Kelly's disclaimer of his liability to them."

As bearing on the duty of a principal to promptly disaffirm an unauthorized act, see Johnson v. Jones, 4 Barb. 369; Bridenbecker v. Lowell, 32 id. 9. The opinions in the two cases last cited were by Allen, J. While the principal in those cases received the fruits of the transaction, the duty to promptly repudiate an unauthorized transaction is strongly indicated. See also Benedict v. Smith, 10 Paige, 126; Cairnes v. Bleecher, 12 Johns. 300. At the close of the opinion in the last cited case, Spencer, J., says: "It is a salutary rule in relation to agencies that when the principal

is informed of what has been done he must dissent and give notice in a reasonable time or otherwise his assent to what has been done shall be presumed. Newhope & D. B. Co. v. Phenix Bank, 3 N. Y. 156; Hazard v. Spears, 4 Keyes, 469."

In the case under consideration, while the plaintiff did not collect any part of the debt from Webb, yet, by his failure to object when notified of such payment on January 9, 1911, the defendant was lulled into a fancied security and was prevented by the plaintiff's acts from promptly proceeding against Webb.

The plaintiff had required Webb to guaranty the account; this in connection with his subsequent attempt to collect from Webb tends to show that he accepted Webb as his debtor.

Suppose that, on January 9, 1911, the plaintiff and the defendant had met and had a conversation of the same tenor as appears in the brief correspondence had; the plaintiff notifying the defendant that the claim was not paid and asking for payment thereof, and the defendant stating " I have already paid your agent, Mr. Webb," and that thereupon the defendant turned away and left him without replying, and remained silent for over two months, during which time he tried to collect the claim from Webb. Would not such circumstances not only indicate an acquiescence, but would not a finding otherwise be against common experience and the equities of the case?

In determining whether there was a ratification of Webb's act, the defendant has the right to invoke the plaintiff's conduct toward Webb, although not at that time known to him. Suppose that the plaintiff had, without the knowledge of the defendant, accepted Webb's note. There would be little doubt that such act would be a ratification. It would have extended Webb's time in which to pay, and would have waived any action which he might have against the latter in tort. He actually endeavored to collect and waived no right of action. It seems to me that the latter course is fully as effective as a ratification as the former would have been. Schantz v. Martin, 37 Misc. Rep. 492.

The plaintiff had two courses to pursue upon receipt of

defendant's letter of January seventh, either to repudiate the transaction or accept it; he could not do both. The entire correspondence with Webb shows that he abandoned the claim against the defendant and resorted to Webb. See Towle v. Stevenson, 1 Johns. Cas. 110.

It may be claimed that the question of ratification is one of fact and is put at rest by the decision of the trial court. Prior to the act of 1900, amending the act creating a Municipal Court in Syracuse, the provisions relating to appeals from Justice's Court for new trials were applicable to that court. This right was abolished and a provision was inserted that, on an appeal from a judgment rendered upon a trial without a jury, an appeal may be taken upon the facts as well as the law. See Laws of 1906, chap. 520, § 22. It would seem that this provision intended to enlarge the scope of this court in reviewing the facts upon a trial had before a judge of that court. Otherwise the provision is meaningless, as this court already possesses power (when the question is properly presented), under the provisions of section 3063 of the Code of Civil Procedure, to set aside a judgment, if contrary to or against the weight of evidence. And it is to be noted that in this case the facts are undisputed. See Mechem Agency, § 135.

Judgment reversed, with costs to abide the event. A new trial to be had before the same judge, at a time to be fixed in the order; and the costs of this appeal to be inserted in any subsequent judgment rendered in the Municipal Court.

Judgment reversed and new trial ordered with costs to abide event.