(149 App. Div. 341.)

## GOLDSTEIN v. TANK.

(Supreme Court, Appellate Division, Fourth Department. March 6, 1912.)

1. PRINCIPAL AND AGENT (§ 105*)—AUTHORITY OF SALESMAN.

 It is a general but not inflexible rule that an agent selling an article not in his possession is not authorized to receive payment therefor.

 [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 298–310, 374; Dec. Dig. § 105.*]

2. PRINCIPAL AND AGENT (§ 170*)—SALES BY AGENT—PAYMENT TO AGENT—RATIFICATION.

 Where a payment is made to a solicitor of orders, who is not in possession of the goods sold, and the principal knows thereof, he is bound to promptly repudiate the payment and notify the purchaser; and if he endeavors to obtain payment from the agent, and makes no demand on the purchaser for more than two months, he ratifies the act of the agent and cannot maintain an action for the price.

 [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 638–643; Dec. Dig. § 170.*]

 McLennan, P. J., dissenting.

Appeal from Onondago County Court.

Action by Bernard J. Goldstein against Charles D. Tank. From a judgment (73 Misc. Rep. 300, 132 N. Y. Supp. 466) reversing a judgment for plaintiff, he appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Louis L. Waters, for appellant.
Edgar F. Brown, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SPRING, J.   Under date of November 15, 1910, the plaintiff, who was carrying on business in the city of New York under the name of Ajax Fire Engine Works, in reply to a letter from the Syracuse Fire Extinguisher Company, wrote stating the price of one of its fire engines, with the conditions of sale; and also sent circulars and printed matter relative to the same.   On the 18th of November, the defendant, living in Syracuse, ordered an Ajax chemical fire engine of the Syracuse Fire Extinguisher Company, stipulating in the order that the sale was to be made on 30 days' approval, etc.   This letter Mr. Webb, who was the Extinguisher Company, forwarded to the plaintiff.   On the 19th of that month the plaintiff acknowledged to the Fire Extinguisher Company the receipt of this order, and at the same time stated that it would require the Extinguisher Company "to guarantee the account in question."   On the same day the plaintiff also wrote a letter to the defendant thanking him "for your order sent through our agents, the Syracuse Fire Extinguisher Company," and adding that shipment would be made in a few days.   On the 22d day of November, the plaintiff shipped directly to the defendant the fire engine which he had ordered through the Syracuse Company, conforming in its stipulations to those embodied in the order which the defendant had delivered to the Syracuse agent.   At the same time the plaintiff wrote to its Syracuse agent advising it of the shipment of the engine to the defendant and giving it instructions as to testing the machine, etc.   There was nothing in the letters from the plaintiff to the defendant advising the latter to make payment directly to it, and on the 20th day of December the defendant gave a check to the Syracuse Fire Extinguisher Company in payment of the engine which he had purchased.

[1] We appreciate the existence of the general rule that a selling agent selling an article not in his possession is not authorized to receive payment for such article; but the rule is not an inflexible one, and its application in a given case depends upon the circumstances connected with the transaction.   Scott v. Hopkins, 2 N. Y. St. Rep. 324.

The order for the engine was given by the defendant directly to the agent, and he knew nothing of the relations existing between it and the plaintiff.   The plaintiff had advised the defendant in his first communication that the Extinguisher Company was his agent, and in the letter accompanying the shipment of the machine there was no suggestion that payment should not be made to the agent.   Again, it required the agent to guarantee the account, which made Webb or his company primarily liable for its payment, and so he had an interest which, perhaps, gave him authority to receive payment, although the evidence does not show that he did in fact make the guaranty required.

Even if these facts are not sufficient to establish that the agent was authorized to receive pay for the engine, they do indicate that in the actual communication between the parties there was no suggestion to the defendant that the purchase price of the engine should not be paid to the agent.

[2] Passing this question, however, we think the evidence shows that the plaintiff by his subsequent conduct ratified or assented to the payment made by the defendant to the agent of the plaintiff. On the 5th of January, 1910, the plaintiff wrote to the defendant, referring to the shipment of the fire engine, and stating that the account was overdue. On the 7th the defendant answered this communication advising the plaintiff that he had paid the account to Mr. Webb of the Syracuse Fire Extinguisher Sales Company, of whom the engine was ordered. On the 9th the plaintiff wrote to its agent in Syracuse, advising it of the letter of the defendant, and asking that it give immediate attention to the matter and send a check by return mail. This was followed by a series of letters, which, apparently, did not elicit any reply. They were all written in an attempt to collect the account of the agent, although after the first letter the plaintiff disclaimed any authority in the agent to receive payment. A time was fixed in one of the letters within which the payment must be made. Finally the account against its agent was left with a mercantile agency company in New York City, and on the 2d of March it wrote to the agent demanding immediate settlement of the claim. This was followed by a further communication from the same agency company on the 14th of that month. There was no reply during all this time to the letter of the defendant to the plaintiff of January 7th, and no intimation that the payment to the Syracuse agent was unauthorized, and no letter, apparently, ever was written after January 7th by the plaintiff to the defendant; but about the 1st of April the attorneys for the plaintiff formally demanded the payment of the account, which was refused. I think the obligation was upon the plaintiff, when the latter notified him of the payment of this account to the plaintiff's agent, to advise him promptly if it was expected to repudiate the authority of its agent. Glor v. Kelly, 49 App. Div. 617, 619, 63 N. Y. Supp. 339, affirmed 166 N. Y. 589, 59 N. E. 1123; Clark & Skyles on the Law of Agency, p. 337; Hope v. Lawrence, 50 Barb. 258.

The plaintiff elected to look to his agent for pay, and pursued that course unvaryingly for nearly three months, and apparently until the effort was hopeless, and whatever he might say in some of his communications challenging the authority of the agent to receive payment, he was all the time ratifying the agent's conduct in receiving this money from the defendant.

The judgment of the County Court should be affirmed, with costs of this appeal to the respondent.

Judgment of the County Court affirmed, with costs of this appeal to the respondent. All concur, except

McLENNAN, P. J. (dissenting). The facts are not in dispute. At all the times mentioned plaintiff was doing business as the Ajax Fire Engine Works, having his principal office and place of business in the city of New York. Before any of the transactions referred to occurred, a certificate had been duly filed by the plaintiff, authorizing him to do business by and under such name. Without contradiction it appears that the Syracuse Chemical Fire Extinguisher Company

was employed as agent for the plaintiff to sell one of its fire engines to the defendant, and that such sale to the defendant was consummated through such agency. The terms of sale having been agreed upon by the defendant through such agency with the plaintiff, the sale was consummated by the shipment of the engine which is the subject of this litigation, to the defendant, billed to him in the regular way by a regular bill of lading, and at the same time a bill for the purchase price of such engine was sent to the defendant. So that we start with the proposition that the engine was in the possession of the plaintiff until shipped to the defendant and transfer of such possession was made to the defendant through such bill of lading, and also, at the same time, the defendant was informed of plaintiff's claim against him for the purchase price of such engine.

Even before the purchase price for such engine became due and payable to the plaintiff, it transpired that the defendant paid one Webb, president of the Syracuse Chemical Fire Extinguisher Company, the purchase price of such engine, and when plaintiff requested payment from the defendant, the plaintiff was notified that the purchase price had been paid to his selling agent. Thereupon concededly the plaintiff by various correspondence, threatening and otherwise, extending over a period of $2\frac{1}{2}$ months, sought to induce the selling agent, viz., the Syracuse Chemical Fire Extinguisher Company, to turn over to him the money which had been placed in its hands by the defendant, the purchaser of plaintiff's machine. Such negotiations with the agent came to naught, nothing could be recovered in that regard, and so the plaintiff asks the defendant to pay the purchase price of the machine which he had received and which concededly he had not paid; and the question is: Under such circumstances, is the seller of goods precluded from recovering therefor? The law, as I understand it, is well settled that the seller of goods who is not in possession of the same has no actual or implied authority to receive the purchase price of the same, and that the purchaser who makes payment therefor to such selling agent does so at his peril. Higgins v. Moore, 34 N. Y. 417. The authority of this case has never been questioned, and if such is the law, the defendant is in no better position than as if the plaintiff had said to him: "The Syracuse Chemical Fire Extinguisher Company is our agent to sell, but is not our agent to collect, and you must not pay to it. The remittance must be direct to me." Of course, under such circumstances, if the purchaser of goods had violated such instruction and paid the price thereof to the seller's agent, he would not be relieved from again paying to the seller of the goods. The law says an agent to sell is not an agent to collect, where the goods are sent direct to the purchaser from the seller and a bill sent running to the seller for the purchase price. And this has been so decided as matter of law. Indeed, if it were otherwise, it would be unsafe for commercial houses and manufacturers of goods to trust the sale of their products to drummers or sales agents.

In this case there is no suggestion that there was any course of dealing between the agent, the plaintiff, or the defendant, which would have led the defendant to understand, believe, or know that he

was authorized to pay the agent for the goods, the invoice for which he received direct from the plaintiff with a bill asking for payment accompanying the same.

It is suggested that this judgment of reversal can be sustained because, after the defendant had informed the plaintiff that the purchase price of the engine had been paid to his selling agent, the plaintiff did not immediately or within 2½ months repudiate such payment. Instead, it is conceded that the plaintiff sought, having been advised by the defendant that the agent had the money which belonged to the plaintiff, to induce such agent to turn it over to the plaintiff, and after a struggle of 2½ months, that failing of accomplishment, he brought this action to recover the purchase price of the engine from the defendant, who received it from the plaintiff with a fair statement that the purchase price was due from the defendant to the plaintiff. Notwithstanding, without any authority from the plaintiff, the defendant assumed to pay the selling agent. After the plaintiff had been informed that such purchase price had been paid to its selling agent, he tried for 2½ months to make his agent refund to him the money thus received. Failing in such endeavor, this action was brought. I think there is nothing in the evidence to indicate that the plaintiff intended to accept the agent as its debtor in the premises, and that no action upon his part in attempting to collect from the agent, who the defendant said had his money, for 2½ months, effected an estoppel so as to prevent the plaintiff from pursuing his remedy against the defendant as for goods sold and delivered.

There is no suggestion in this case that any change had taken place in relation to the parties, nothing to indicate that the selling agent was not quite as responsible at the time of the trial as he was when the plaintiff was informed that the money had been paid to him.

I think the case of Glor v. Kelly, 49 App. Div. 617, 63 N. Y. Supp. 339, is easily distinguishable from this case. There the situation of the parties had materially changed. The agent and the purchaser were both dead, and more than two years had elapsed after plaintiff had been informed that the purchaser had paid to the agent the amount of the purchase price. And also it appeared in that case that after having pursued to the utmost the agent, and having found that his estate was insolvent, the plaintiff sought then to have recourse to the estate of the defendant. While that case was decidd by a divided court, I think even the prevailing opinion cannot be regarded as supporting the contention of the defendant in this case.

Upon the trial before the judge of the Municipal Court, a jury having been waived, the judge was entitled to find any reasonable inference permissible by the evidence as to whether or not the plaintiff had ratified the unauthorized act of his agent in receiving the purchase price of the engine in question, and it must be assumed that the decision of the court was adverse to the defendant upon that proposition, and we think the finding of the Municipal Court judge in that regard is amply justified on all the evidence.

It follows that the judgment of the County Court should be reversed, and the judgment of the Municipal Court affirmed, with costs to the plaintiff in this court and the County Court.