### FATTA v. EDGERTON.

(Supreme Court, Special Term, Erie County.  August, 1912.)

**1. PRINCIPAL AND AGENT (§ 99*)—ACTS OF AGENT WITHIN APPARENT AUTHORITY.**

A principal is bound by such acts of an agent as a party dealing with the agent is justified in believing the principal has given him authority to do.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 254–261; Dec. Dig. § 99.*]

**2. PRINCIPAL AND AGENT (§ 171*)—RATIFICATION OF AGENT'S ACTS.**

One, to avoid ratification of his agent's act in receiving a payment for him, if unauthorized, should repudiate it within a reasonable time after notice; and ratification for any length of time is final.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 644–655; Dec. Dig. § 171.*]

**3. ATTORNEY AND CLIENT (§ 98*)—AGENCY—EVIDENCE.**

Evidence in an action to avoid a mortgage given by plaintiff to defendant for a loan with which to take up other mortgages on the property *held* to justify defendant, or his agent, in believing that plaintiff's attorney, employed in the matter, was authorized to receive the money for plaintiff to pay off the prior mortgages so that plaintiff should bear the loss of the attorney's misappropriation of the funds.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 190–195, 207; Dec. Dig. § 98.*]

Action by Maria A. Fatta against George B. Edgerton.  Judgment for defendant.

See, also, 143 App. Div. 658, 128 N. Y. Supp. 181.

White & Babcock, for plaintiff.
Sullivan, Bagley & Wechter, for defendant.

MARCUS, J.  In 31 Cyc. 1222, the summary of conclusions derived from adjudications is as follows:

"In the negotiation of loans it is often difficult to determine whether an intermediary is the agent of the borrower or of the lender.  Each case must be decided upon its own particular circumstances.  If a person desiring a loan makes known that desire to one who applies to a money lender and consummates the loan, the intermediary is the agent of the borrower, not of the lender.  So * * * if he pays the agent's commissions for negotiating the loan, or if he employs the intermediary to examine the title to the property offered as security, or to discharge prior incumbrances thereon, these facts, taken collectively or in various lesser combinations, justify an inference that the intermediary is the agent of the borrower.  On the other hand, if a money lender employs the intermediary to negotiate loans, to examine the title to property offered as security, to see that the property is

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

discharged from prior incumbrances, to prepare the papers and see to the execution thereof, to pay over the money to the borrower, or to perform other services in regard to the loan, these facts, taken collectively or in various lessen combinations, justify an inference that the intermediary is the agent of the lender. If the lender pays the intermediary's commission, it tends to establish an agency in the lender's behalf; and if the service is performed at the request and by the direction of the lender, presumptively the agent is his agent, even though the borrower is required to pay for the service. However, none of the foregoing facts is conclusive on the question of agency, and will not preclude the alleged principal from showing that the intermediary was actually acting as the agent of the other party, or as agent of each, but for different purposes."

In a note on page 1225 it is stated:

"Whether a loan agent, who retains part of the money loaned until prior incumbrances are discharged, acts in so doing as agent of the lender, or of the borrower, is in dispute. Certainly he may be so employed by the borrower. But when the agent is directed to retain a portion of the loan until the prior incumbrance is discharged, it would seem that he does so for the lender, who alone is interested in having the discharge before he parts with his money. Otherwise, the retention of the money seems without meaning, for, if the agent acts for the borrower, then his possession is the possession of his principal, and the latter may demand that the money be paid him without discharging prior claims against the property; and such is the holding of many cases [citing]. But there are other cases that hold that the discharging of the prior incumbrance is the duty of the owner of the property, and hence in attending to such discharge the agent acts for him [citing cases]."

But, as the court remarked in Marden v. Dorthy, 12 App. Div. 193, 42 N. Y. Supp. 830:

"The rights of the parties are to be determined by the facts and circumstances as they exist here, and are not to be adjudged by decisions in other cases presenting facts substantially different. Where the question is one to be determined upon the facts of the case, no one case can be an authority for another; nor is it a very profitable inquiry to consider whether one case resembles another in its facts. A decision may, perhaps, be a binding authority as to the conclusion of facts arrived at, where the facts are identical, but not otherwise. In any other case the tribunal must investigate the facts for itself, and determine whether the evidence is sufficient to create a legal or moral certainty, either the one way or the other."

This case seems to me to make it advisable to state and keep in mind certain legal principles.

[1] The principal is bound, not only by the acts of the agent which are within the scope of his authority, but also by such acts as justify a party dealing with the agent in believing that the principal has given him authority to do them. Walsh v. Hartford F. Ins. Co., 73 N. Y. 5, 10. The question can only be decided after a consideration of the evidence throwing light upon the relations of the parties, and is one of fact upon all the circumstances of the case. Carlisle v. Norris, 144 App. Div. 692–693, 129 N. Y. Supp. 585.

[2] There is another principle that may be invoked in determining this case, and that is: The principal is under obligation, when informed of a payment made to the agent, to advise the payor promptly, or within a reasonable time, if he wishes to repudiate the agent's authority to receive it; and if he does not so dissent, his silence may

afford conclusive evidence of his approval. Goldstein v. Tank, 149 App. Div. 341, 134 N. Y. Supp. 262; Id., 73 Misc. Rep. 304–306, 132 N. Y. Supp. 466, where authorities upon the first point are quoted. And where neglect to repudiate the unauthorized act of the agent may amount to a ratification, that is equivalent to an original authority to receive the money, and not merely as presumptive evidence that it was previously done by authority. Commercial Bank v. Warren, 15 N. Y. 577; Heermans v. Clarkson, 64 N. Y. 171. A small matter is sufficient to establish ratification, and the acts of the principal are to be construed liberally in favor of the agent. If what was done without authority has been adopted in any manner, even for a moment, the principal cannot recede, but is conclusively bound. Green v. Clark, 5 Denio, 503.

These principles have particular application to the case of an attorney and legal adviser specially employed in the transaction of a loan, whose duty it is to perfect the client's title, examine documents and records, prepare legal papers or supervise their preparation, and see to the consummation of the proposed loan. At the outset it should be observed that this is not a case of conversion of money by the intermediary, and the question arises, Who must bear the loss, the lender or the borrower? Nor is it a question as to the responsibility for negligence in examining the title, or whether the agent's knowledge of defects should be imputed to the one or the other. Day was not the sole "intermediary," for there was another one, viz., Fennelly, the plaintiff's legal adviser.

[3] The question clearly is whether the defendant should be held responsible for the fraudulent conduct of plaintiff's own lawyer in misappropriating the money paid to him for the special purpose of discharging the mortgages upon her property and thus securing to her the benefit of the loan. The answer to this question depends upon whether Day was justified in believing that Fennelly was authorized to receive and apply the money for the purpose for which it was paid him, and thus fulfill the indispensable condition upon which the money was to be advanced, viz., that the liens should be discharged and a first mortgage given to the defendant. The authority of the attorney may be implied or inferred from all the circumstances of the case, the particular relations of the parties, and the nature of the transaction.

The evidence shows that the plaintiff and Fatta reposed confidence in Fennelly, and that they had no evident reason to mistrust or suspect him, in the matter of handling money for her. She had theretofore intrusted him with $800 to procure the reconveyance. In that matter, as in this, he deceived her; but not the defendant personally, as he did not repose any trust in him, or confer any authority upon him, whatever. Day trusted him, and believed he was justified in doing so, since Fennelly was plaintiff's lawyer, authorized to straighten out her title, and to do exerything necessary to consummate the loan, in the way of examining records and documents, drafting papers, and seeing to their execution and delivery.

In determining the question whether Day believed and had a right to believe that Fennelly would be acting within, and not exceeding,

his authority in receiving the money for the purpose of applying it in fulfillment of the agreement for the loan, it is immaterial whether Day was but a mere agent of defendant, or whether he was the principal himself. We will suppose he stood in the latter position.

We are unable to perceive that the new evidence adduced is sufficient to justify the court in coming to a conclusion different from that reached by the Appellate Division upon a review of the evidence and findings. 143 App. Div. 658, 128 N. Y. Supp. 181. Upon the first trial Day testified that Fatta "directed" him to pay the money over to F., meaning, no doubt, that he requested or suggested this, since Fatta could not direct him. Presumably this was an impression made upon his mind from the conversations had with Fatta and from all the circumstances and the condition of things as then existing. He now testifies that Fatta did not request him to pay the money to the attorney to enable him to close up the transaction. Still the question of implied authority remains, and whether the appearances of things justified Day in leaving it to F. to "close up the transaction," instead of attending to the matter himself. The fact that Day's duty to his principal required him to personally discharge the lien upon receiving the mortgage, and that he failed to perform such duty, cannot aid the plaintiff or afford her any assistance.

Edgerton now testifies that Day was his attorney and agent in the whole transaction. Certainly he did not hold the money as agent of the plaintiff, she had no right to it. Observe that when the mortgage was executed (December 12, 1908) the plaintiff had not the legal title. The mortgage therefore remained inoperative and unaccepted, even though it was left with Day. Something must be done. Who shall do it? Fennelly, of course. On July 12, 1909, he obtained the reconveyance to himself. On February 26th he conveyed to plaintiff by deed dated January 12th. On March 1st he delivered these deeds to Day, who thereupon drew his check for $2,088.66. On March 4th or 6th, he drew a check for $400, when the unrecorded mortgage of $400 had been satisfied.

Fatta says that the mortgage was executed in Day's office and left there. Day denies this, and says it was taken away and delivered by Fennelly to him, executed, with the other papers, March 1st. The probabilities appear to support Day's testimony, since it is a natural and reasonable supposition that the plaintiff should desire to execute the mortgage in the presence and under the supervision of her lawyer, who was employed to take care of her interests in the matter of the loan.

However, there is a strong probability that the instrument, though executed, was not left with Day, but taken to Fennelly. It was of no use to Day; it was worth nothing. Plaintiff makes strong effort to impress upon the court the conviction that plaintiff and Fatta relied solely and exclusively upon Day himself, rather than upon Fennelly, their trusted lawyer, to pay and discharge the mortgages and other liens, and thus suggesting the inference that they could not trust a man whom they were continually trusting; in other words, that Fennelly, although authorized to take care of their interests and to close

up the loan transaction, yet neither she nor Fatta ever intended that he should have the handling of the money—that *he* personally should make the application of it.

This is hardly believable. They did not, supposedly, expressly or in terms, authorize him to receive and apply the money; still was not the reception of the money fairly within the scope of his authority to consummate the loan, if the lender should be willing to trust him with it? Was not Day reasonably justified in believing that, by virtue of his authority to close up the transaction, he possessed authority to receive the money, and that he could safely pay it over to him?

Day says that he immediately gave to Fatta the statement showing what he had done with the money, from which it appears that he had paid over some of it to Fennelly. Fatta denies this, and states that he had no knowledge of the fact until some time in November, 1909, after receiving the Utley notice calling for interest due November 1st. He, of course, was satisfied that everything was regular and that the mortgages were discharged, although there was no evidence of it and no proper inquiry made. He relied upon Day alone to discharge the mortgages, and yet he permitted him to retain the Edgerton mortgage without requiring him to deliver up the documentary evidence of the fact. Evidently he placed great trust in Day, but no confidence in Fennelly. There is no pretense that Day intended to cheat, defraud, or injure anybody in the transaction, though the effect of his act proved injurious to the interests of his employer, who, instead of getting a first mortgage, received a junior one.

Day testified that he saw Fatta upon several occasions, and told him that Fennelly had not discharged the mortgages. "I want the matter closed up, and want them paid." But this, of course, is denied, though it bears the impress of truth, since it is reasonable to suppose that Day was paying some attention to the interests of his client, in seeing to it that the liens were in fact discharged of record. Day left it to Fennelly to perform this duty to his (Fennelly's) own client, and all the circumstances indicate pretty clearly that Fatta acquiesced. Even after receiving the Utley notice, the plaintiff allowed considerable time to elapse before she made any distinct repudiation of the act of Fennelly in receiving the money. After vain endeavors to compel or induce Fennelly to pay the Utley mortgage, the plaintiff then turns about and seeks to hold defendant responsible for the fraudulent conduct of her own lawyer.

In December, 1909, interest was paid by Fennelly on the Edgerton mortgage; but, of course, they knew nothing of that either. In Ahern v. Goodspeed, 72 N. Y. 115, it is remarked:

"But such ratification does not take place, unless the principal is fully informed at the time of all the circumstances of the transaction, or unless he means, *without inquiry*, to take upon himself the responsibility of what the other may have said or done, and to adopt all of his acts. It is not needed that there be an express act of ratification, in order to hold the principal. This subsequent assent may be inferred from the circumstances, which the law considers tantamount to an express ratification."

In view of all the circumstances and facts presented by the evidence, the court feels constrained to come to the conclusion that Day

was justified in believing that he could safely pay the money to the plaintiff's attorney in order to discharge the liens in place of which the Edgerton mortgage was intended to be substituted.